```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                        :
JACK D. FRENCH,                         :   Case No. 1:15-CV-2284
                                        :
         Plaintiff,                     :
                                        :
vs.                                     :   OPINION & ORDER
                                        :   [Resolving Doc. Nos. 6, 11]
UNITED STATES OF AMERICA,               :
                                        :
         Defendant.                     :
                                        :
------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Jack French sues Defendant United States under the Federal Tort Claims Act for torts allegedly caused by staff at the Department of Veterans Affairs at the Louis Stokes Cleveland Veterans Administration Medical Center.[1] Defendant United States moves to dismiss this action under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff French opposes the motion.[2] For the following reasons, the Court **GRANTS** Defendant's motion.

### I. Background

Plaintiff French is a Vietnam War Veteran. In July 2013, Plaintiff French resided at the Cleveland Veterans Administration ("VA") domiciliary "due to his homelessness and the need for a safe, temporary residence."[3] In his complaint, Plaintiff alleges that on July 22, 2013, at

---

[1] Doc. 9.
[2] Doc. 11.
[3] Doc. 9 at ¶ 18.

Case No. 1:15-CV-2284
Gwin, J.

approximately 7 a.m., he was sexually propositioned by the VA chaplain who was part of Plaintiff's treatment team.[4]

On the same day, Plaintiff reported the incident to his psychologist, Dr. Heather Flores; his social worker, Mark Pountney and Patricia James-Steward, the head of the Cleveland VA Medical Center's domiciliary.[5] At the instruction of James-Seward, Plaintiff submitted a written statement the next day, July 23, 2013. Plaintiff submitted an amended written statement on July 31, 2013.

Plaintiff alleges three sources of injury: First, Plaintiff alleges that the VA injured Plaintiff by hiring, retaining, failing to train, and failing to supervise both the chaplain and other VA employees.[6] Second, Plaintiff alleges that there was a ten-day delay in investigation and that his treatment time "failed to timely act on Plaintiff's reporting."[7] Third, Plaintiff alleges that he was required to meet directly with VA staff and the chaplain as part of the investigation.[8] Plaintiff says that the VA failed to protect plaintiff by prohibiting the chaplain from having contact with him.[9]

Plaintiff says that "the encounters with [the chaplain] and the significant delay of the investigation caused Plaintiff to suffer severe emotional distress, including PTSD. Due to his

---

[4] *Id.* at ¶ 19. In particular, Plaintiff French alleges that the chaplain offered to give Plaintiff a prostate exam. When Plaintiff was startled by the chaplain's comments, he spat out the milk he had been drinking, to which the chaplain responded: "You weren't supposed to spit that out. You should keep it in your mouth and swallow." *Id.* at ¶ 19.

[5] *Id.* at ¶¶ 18, 20.

[6] *Id.* at ¶¶ 34-42.

[7] *Id.* at ¶¶ 20-22. The exact delay is ambiguous from the pleadings, but it appears that Plaintiff French complains of the delay between July 23 and July 31. *Id.* at Doc. 9 at ¶¶ 20. Plaintiff claims that James-Steward did not act until August 1, 2013. Doc. 9-2 at 11.

[8] *Id.* at ¶¶ 20-22

[9] *Id.* Plaintiff further alleges that November 2014 and January 2015 Plaintiff encountered the chaplain at the Cleveland VA on three separate occasions, and these "encounters exacerbated his symptoms." *Id.* at ¶ 25.

Case No. 1:15-CV-2284
Gwin, J.

mental anguish, Plaintiff attempted suicide on three separate occasions from August 2013 to October 2013 and required hospitalization."[10]

Plaintiff went through an administrative process to redress the chaplain's actions.[11] The Department of Veterans Affairs denied his administrative claim.[12] Plaintiff French now brings this lawsuit. Plaintiff alleges five distinct claims: four negligence-based claims (negligence; "negligent hiring / retention / entrustment / training / supervision"; premises liability; *respondeat superior*), and one claim for intentional infliction of emotional distress.[13]

Defendant moves to dismiss Plaintiff's four negligence-based counts under Rule 12(b)(1) for lack of subject matter jurisdiction. In particular, Defendant argues that all three claims fall under the discretionary function exception to the Federal Tort Claims Act. If the VA employees had discretion in taking the actions that allegedly caused the tort, Defendants say this Court does not have subject matter jurisdiction and the claims must be dismissed.

Defendant moves to dismiss Plaintiff's fifth claim — intentional infliction of emotional distress — under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In particular, Defendant argues that Plaintiff has failed to allege that an objective, reasonable person would find the Defendant's conduct sufficiently outrageous.

In the alternative, Defendant moves to dismiss Plaintiff's four negligence-based claims under Rule 12(b)(6) as well.

---

[10] *Id.* at ¶ 22.
[11] *Id.* at ¶¶ 22-25.
[12] *Id.* at ¶ 5.
[13] Doc. 13-1 at 6-8. This Court relies on Plaintiff's characterization of his own complaint in identifying these five separate claims. The complaint at times merges together these distinct torts. *See* Doc. 9.

-3-

Case No. 1:15-CV-2284
Gwin, J.

**II. Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss when "it appears beyond doubt" that the plaintiff fails to state a claim upon which relief may be granted.[14] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[15] In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the [] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's conclusory allegations as true.[16]

"Subject-matter jurisdiction, by contrast, refers to a tribunal's power to hear a case. It presents an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief."[17] It is axiomatic that parties cannot consent to subject-matter jurisdiction. When a defendant challenges subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over his claim.[18]

A federal court does not have subject matter jurisdiction over every claim brought against the United States government. If the government has not waived its sovereign immunity with respect to a particular claim, federal courts lack subject matter jurisdiction over that claim.[19]

In this case, the Defendants say the United States has not waived sovereign immunity under the Federal Tort Claims Act (FTCA) for Plaintiff's claims. Under the FTCA, the United States has consented to be sued for personal injuries caused by the negligence of government

---

[14] Fed.R.Civ.P. 12(b)(6); *Conley v. Gibson,* 355 U.S. 41, 45 (1957).
[15] *Ashcroft v. Iqbal,* 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
[16] *Iqbal, 129 S.Ct. at 1949–51*.
[17] *Morrison v. Nat'l Australia Bank Ltd., ––– U.S. ––––, ––––, 130 S.Ct. 2869, 2877, 177 L.Ed.2d 535 (2010)* (quotations, citations omitted).
[18] *Hedgepeth v. Tennessee,* 215 F.3d 608, 611 (6th Cir.2000).
[19] *Montez ex rel. Estate of Hearlson v. United States,* 359 F.3d 392 (6th Cir. 2004).

Case No. 1:15-CV-2284
Gwin, J.

employees acting within the scope of their employment.[20] But the United States has *not* consented to suit for a claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused."[21] If a claim falls under this so-called "discretionary function" exemption, then a federal court does not have subject matter jurisdiction to hear the case.

This Court must consider two factors when determining whether an action or omission falls within the discretionary function exception. First, the act or omission must be one that "involves an element of judgment."[22] In other words, the rules governing the action in question must allow for discretion; there cannot be a "federal statute, regulation, or policy" that specifically prescribes a course of action, leaving "the employee [] no rightful option but to adhere to the directive.'"[23]

Case law from the Sixth Circuit sheds light on this first inquiry. "This Circuit has consistently held that agency supervisory and hiring decisions fall within the discretionary function exception."[24]

Moreover, the Sixth Circuit has held that polices of a "general nature" — such as those calling for government employees to "provide protection" and "provide safekeeping" to inmates in federal prison — were not specific enough to give rise to non-discretionary obligations.[25] In another case, the Sixth Circuit reviewed protocols for mine inspectors working with the

---

[20] *Id.* at 395 (citing *Rosebush v. United States*, 119 F.3d 438, 440 (6th Cir. 1997)).
[21] 28 U.S.C. 2680(a). This exception is intended to prevent "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).
[22] *United States v. Gaubert*, 499 U.S. 315, 323 (1991).
[23] *A.O. Smith Corp v. United States*, 774 F.3d 359, 364 (6th Cir. 2014) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).
[24] *Snyder v. United States*, 590 F. App'x 505, 510 (6th Cir. 2014) (gathering citations).
[25] *Montez*, 359 F.3d at 396-97.

Case No. 1:15-CV-2284
Gwin, J.

department of labor.[26] The directives stated that if certain conditions were found (for example, if an inspector found an "imminent danger") then the inspectors had particular obligations (for example, to issue a withdrawal order from the mine).[27] The Sixth Circuit held that the discretion to determine the antecedent condition afforded sufficient discretion to satisfy the first step of the test, even if there were clear mandatory obligations that subsequently arose.[28]

Under the second step of the discretionary function exemption, the nature and quality of that judgment must be of the type the exception seeks to shield from liability (*i.e.* concerning matters of policy).[29] There is a "strong presumption" that the second step is satisfied if a court concludes that the employee was exercising discretion.[30]

The two-step inquiry into the discretionary function exemption is relevant at the motion to dismiss stage. "Because the United States has not waived its sovereign immunity with respect to discretionary functions, courts lack subject matter jurisdiction over acts falling within the discretionary function exemption."[31]

If a claim does not fall within the discretionary function exception, the United States is liable only under circumstances "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[32]

---

[26] *Myers v. United States*, 17 F.3d 890 (6th Cir. 1994).
[27] *Id.* at 894.
[28] *Id.* at 896.
[29] *Gaubert*, 499 U.S. at 323.
[30] *A.O. Smith Corp.*, 774 F.3d at 364 (citing *Gaubert*, 499 U.S. at 324).
[31] *Montez*, 359 F.3d at 295 (citing *Rosebush*, 119 F.3d at 440).
[32] 28 U.S.C. § 2672.

Case No. 1:15-CV-2284
Gwin, J.

**III. Analysis**

A. Negligence-Based Claims

A district court "determine[s] exactly what conduct is at issue," prior to considering the discretionary function factors.[33] As a result, this Court looks to each element of the alleged negligent conduct.

i. *Negligence in hiring, retaining, entrusting, training and supervising*

First, Plaintiff points to the VA's conduct in hiring, retaining, entrusting, training and supervising the chaplain and other members of the VA team.[34] However, these claims fall squarely within the discretionary function exception. The Sixth Circuit has consistently held that such hiring decisions are discretionary.[35] Because these claims fall within the discretionary function exception, this Court does not have subject matter jurisdiction to hear them.

ii. *Negligence in investigating the alleged abuse*

Second, Plaintiff points to the VA's delay in investigating the chaplain's alleged conduct. However, deciding how long to wait to open an investigation is a question that "involves an element of judgment."[36]

Indeed, Plaintiff has not identified any "federal statute, regulation, or policy" that leaves the VA employees "no rightful option but to adhere to the directive."[37] Plaintiff says that Ohio

---

[33] *Rosebush*, 119 F.3d at 441.
[34] Doc. 9 at ¶¶ 34-38; Doc. 13-1 at 7.
[35] *Snyder*, 590F. App'x at 510 (gathering citations).
[36] *Gaubert*, 499 U.S. at 323.
[37] *A.O. Smith Corp.*, 774 F.3d at 364.

-7-

Case No. 1:15-CV-2284
Gwin, J.

law and internal VA policy created such mandatory obligations. But none of the policies Plaintiff points to are persuasive.

First, Plaintiff says that Ohio's patient rights law produces a mandatory obligation.[38] For instance, residents of residential care facilities have "the right to a safe and clean living environment" and have "the right to have all reasonable requests and inquiries responded to promptly."[39] Plaintiff also cites to laws requiring "[t]he right at all times to be treated with consideration and respect for the patient's privacy and dignity"[40] and "[t]he right to reasonable protection from physical or emotional abuse or harassment."[41]

However, these are all laws of a "general nature." Much like the policies calling for government employees to "provide protection" and "provide safekeeping" to inmates in federal prison, these laws are not specific enough to give rise to non-discretionary obligations.[42]

Next, Plaintiff points to an internal VA policy that includes the right to "receive care in a safe environment."[43] This policy is general. It does not create a requirement that VA staff immediately conduct an investigation after receiving a report.

Finally, Plaintiff points out that the VA's internal policy defines "patient abuse" and says that "any abuse will be immediately reported by the employee(s) that witnessed the incident to their immediate supervisor. The employee who first receives an allegation of patient abuse . . .

---

[38] Ohio's laws are relevant to the federal inquiry because the United States is liable "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 2672. The alleged act or omission took place in Ohio
[39] Doc. 13-1 at 9-10 (citing Ohio Rev. Code § 3721.13).
[40] *Id.* (citing Ohio Rev. Code § 5122.29(B) and (G))
[41] *Id.* (citing Ohio Rev. Code § 5122-14-11(D)(2)(a) and (5)). Plaintiff cites to other similar laws, as well as the laws of "gross negligence" and "neglect." *Id.* The Court has considered each citation. Each suffers from the same flaw. They are too general to give rise to a mandatory obligation to immediately investigate a report of abuse.
[42] *Montez,* 359 F.3d at 396-97.
[43] Doc. 13-1 at 10.

-8-

Case No. 1:15-CV-2284
Gwin, J.

will also immediately report the allegation to their immediate supervisor."[44] While this is a specific requirement, it fails to bring the VA's alleged conduct out of the discretionary function exception. First, there's a preliminary determination that VA staff must make — namely whether the action is abuse under the policy. The discretion to determine the "antecedent condition" satisfies the first step of the discretionary function test.[45] Second, Plaintiff has not alleged a *reporting* failure. In fact, Plaintiff says that he informed the head of the domiciliary on the day of the incident. Even if the VA's internal policy gave rise to a mandatory obligation, it did not give rise to a mandatory *investigation* obligation.

The first step of the discretionary function test is met. The second step is met as well. The discretion to wait a short period of time to respond to a misconduct allegation is the type of judgment "the exception seeks to shield from liability."[46]

### iii. *Negligence in requiring Plaintiff to have contact with the chaplain*

Third, Plaintiff points to the VA's alleged conduct in requiring the Plaintiff to have contact with the chaplain. Again, Plaintiff has not identified any mandatory provision that prohibits the VA's decision to have the involved parties present during the resolution. Indeed, deciding whether an allegation of misconduct is better mediated face to face "involves an element of judgment."[47] Even if it was itself an abuse of discretion to require Plaintiff to meet with the chaplain, the VA still had the discretion to make that choice. And the United States has

---

[44] Doc. 13-2 at 1.
[45] *Myers,* 17 F.3d 896.
[46] *Gaubert,* 499 U.S. at 323.
[47] *Id.*

-9-

Case No. 1:15-CV-2284
Gwin, J.

not consented to suit for a claim "based upon the exercise or performance . . . [of] a discretionary function or duty . . . *whether or not the discretion involved be abused*."[48]

As discussed above, neither Ohio law, nor the VA's policies create a mandatory obligation to separate a VA domiciliary resident from staff members after a report of misconduct.

The first step of the discretionary function test is met. The second step is met as well. The discretion to mediate a misconduct claim is the type of judgment "the exception seeks to shield from liability."[49]

Plaintiff has not shown any negligence-based conduct that can be the basis for liability under FTCA. Because these claims fall within the discretionary function exception, this Court does not have subject matter jurisdiction to hear them. The Court dismisses Plaintiff's negligence-based claims under Rule 12(b)(1). The Court does not reach the question of whether the claims should otherwise be dismissed under Rule 12(b)(6).

### B. Intentional Infliction of Emotional Distress

The Plaintiff's claim for intentional infliction of emotional distress (IIED) is not exempted under the discretionary function exemption.[50] Instead, Defendant moves to dismiss Plaintiff's IIED claim under Rule 12(b)(6), arguing that Plaintiff's amended complaint does not allege a viable IIED claim.

To recover on an IIED claim in Ohio, Plaintiff must prove four elements:

> (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go

---

[48] 28 U.S.C. 2680(a).
[49] *Gaubert*, 499 U.S. at 323.
[50] There is also a list of intentional torts excepted from the FTCA in 28 U.S.C. § 2680(h). Intentional infliction of emotional distress is not included in this list.

-10-

Case No. 1:15-CV-2284
Gwin, J.

> "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community," (3) that the actor's actions were the proximate cause of plaintiff's psychic injury, and (4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it."[51]

The question of "outrageous" conduct is a question of law, and may be addressed in a motion to dismiss.[52]

Mere harassment, humiliation, insults or embarrassment is not sufficient to constitute outrageous behavior.[53] Indeed, even sexually charged and lewd comments by a supervisor or fellow employee does not rise to the level of "outrageous" conduct.[54]

Here, Plaintiff French alleges that the chaplain offered to give Plaintiff a prostate exam. When Plaintiff was startled by the chaplain's comments, French says he spit out the milk he had been drinking. Plaintiff French then says the chaplain responded: "You weren't supposed to spit that out. You should keep it in your mouth and swallow."[55]

Taking Plaintiff's statement as true, the chaplain's actions are inappropriate, but insufficient to rise to the level of "outrageous" conduct as a matter of law. A single isolated incident of a sexually lewd comment does not go "beyond all possible bounds of

---

[51] *Pyle v. Pyle,* 463 N.E.2d 98, 103 (Ohio App.Ct.1983) (quoting Restatement (Second) Torts § 46 cmts. d, j (1965)); *see also* Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995).

[52] *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995).

[53] Anderson v. Hewlett Packard Co., No. C86-3955, 1988 WL 249386, at *2 (N.D. Ohio July 9, 1988). *See also* Restatement (Second) of Torts § 46 (1965).

[54] *Summerville v. Ross/Abbott Laboratories,* 187 F.3d 638 (6th Cir. 1999) (unpublished) (dismissing an IIED claim because unwelcome lewd jokes, comments, body movements, baring of body parts, as well as sexual come-ons and unwelcome touching was not outrageous conduct for purposes of an IIED claim); *see also* Griswold v. Fresenius USA, Inc., 964 F. Supp. 1166, 1174-75 (N.D.Ohio 1997) (rejecting an IIED claim where a male plaintiff alleged that the male defendant made sexual comments to him, touched his chest, sides, and shoulders; put his arm around the plaintiff; and frequently puckered his lips toward the plaintiff, because the conduct did not rise to a level of outrageousness sufficient for an IIED claim); Dodge v. United States, 162 F. Supp. 2d 873, 888 (S.D. Ohio 2001) (holding that a defendant had not engaged in outrageous and extreme conduct where he made lewd comments and started a conversation about oral sex).

[55] Doc. 9 at ¶ 19.

-11-

Case No. 1:15-CV-2284
Gwin, J.

decency." As a matter of law, Plaintiff has failed to allege sufficiently outrageous conduct required for a prima facie intentional infliction of emotional distress claim.

Even if the conduct of the chaplain were "outrageous," Plaintiff's claim for intentional infliction of emotional distress claim fails for an independent reason. Namely, Plaintiff has not alleged the fourth element of the claim: that the mental anguish suffered by plaintiff is so serious that "no reasonable man could be expected to endure it." Instead, Plaintiff repeatedly emphasizes that he was affected by the chaplain's statements because of his "prior history of suicidal ideation and suicide attempts."[56] In Plaintiff's briefing Plaintiff says "it is clear that no person *with Plaintiff's history* could be reasonably expected to endure it."[57] Plaintiff has failed to allege that a reasonable man would suffer mental anguish as a result of the chaplain's comments.

The Court dismisses Plaintiff's intentional infliction of emotional distress claim under Rule 12(b)(6)

---

[56] *Id.* at ¶¶ 17, 31, 36
[57] Doc. 13-1 at 6-7.

-12-

Case No. 1:15-CV-2284
Gwin, J.

### IV. Conclusion

For the foregoing reasons, this Court **GRANTS** the United States' motion to dismiss, finding that Plaintiff's negligence-based claims are barred by the discretionary function exemption, and the Plaintiff's intentional infliction of emotional distress claim fails to state a claim upon which relief can be granted.[58]

IT IS SO ORDERED.

Dated: July 19, 2016                                      *s/    James S. Gwin*
                                                          JAMES S. GWIN
                                                          UNITED STATES DISTRICT JUDGE

---

[58] Defendant's earlier-filed motion to dismiss, which was superseded by Plaintiff's amended complaint, is dismissed as moot. Doc. 6.